Opinion issued December 23, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00108-CV

———————————

**CHARLES BONNER, Appellant**

**V.**

**JAUNATHON WHITE, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 125704-CV**

---

## MEMORANDUM OPINION

Appellant, Charles Bonner, proceeding pro se, challenges the trial court's judgment, entered after a bench trial, in favor of appellee, Jaunathon White, in Bonner's suit against White "to [v]acate a [l]and [d]eed based on [his] lack of a

sound mind and lack of mental competence to make a land/contract deed with [White] due to [m]ilitary – mental illness."

Bonner presents the following three "[e]rror[s]"[1] for our review: (1) "The trial [c]ourt erred in denying [Bonner] an evidentiary hearing on newly discovered posttrial/prejudgment evidence that was not available to [Bonner] prior to or during the trial, but was timely presented to the [trial] [c]ourt, 'prior to the [c]ourt's [j]udgment[,]' on January 23rd, and 24th, 2025 in three [m]otions demonstrating that . . . [White] forged [the] property [d]eed . . . by purporting in writing to be one Jaunathon White, while his real name is 'John Taylor[,]' which render[ed] the deed a forged document as well as null and void ab initio and therefore, incapable of being remedied by a correction deed"; (2) "In light of the fact that [Bonner] [was] a 73 year old 100% Service connected/disabled Vietnam Army Veteran, diagnosed and treated for over 50 years by VA Expert Psychiatrist for incurable Post Traumatic Stress Disorde[r] (PTSD) for well over 50 years, . . . the [trial] [c]ourt . . . erred by finding that [Bonner] was competent to enter into the property deed with [White]"; and (3) "The trial [c]ourt's final judgment unconstitutionally deprived [Bonner] of his property, without due process of law, by rejecting [his] expert [p]sychiatric PTSD

---

[1]    Bonner, in his briefing, lists four "[e]rror[s]," but then states that he has "[c]ombined" "Error[s] No. 1 and No. 4."  Thus, we will treat Bonner's brief as raising three issues because the first and fourth errors have been combined in their discussion.

diagnosis evidence and instead[] accept[ing] [White's] forged deed as evidence against [Bonner]."[2]

We affirm.

## Background

Bonner filed a "Motion to Vacate a Land Deed based on Petitioner's lack of a sound mind and lack of mental competence to make a land/contract deed with [White], due to Military – mental illness" in the trial court. In the document, Bonner sought to "vacate a handwritten property deed" that had purportedly "swindle[d] [him] out of his home and land" located in Brazoria County, Texas (the "property"). (Internal quotations omitted.)

Bonner alleged that his sister, who was White's mother, deeded him the property in 2015, and Bonner built a home on the property. However, on September 17, 2020, Bonner, after taking "his morning [p]sych [m]eds," went to a family party and purchased $200 of cocaine from White. Bonner then went to White's house and consumed the cocaine and alcohol. According to Bonner, while he was intoxicated, White "took total advantage" of him by creating "a handwritten land transfer deed that [Bonner] ha[d] absolutely no memory of ever making," to "transfer[] [Bonner's]

---

[2] To the extent that Bonner, in his briefing, references evidence not contained in the record in the discussion of his issues on appeal, we do not consider such evidence in addressing his issues. *See Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("Evidence that is not contained in the appellate record is not properly before this Court.").

3

land and home" to White. (Internal quotations omitted.) A few days later, Bonner's daughter told him that the property had been deeded to White with the understanding that White would pay the property taxes and Bonner would live on the property until his death. Then, the property would be transferred to White.[3]

White answered, generally denying the allegations in appellant's petition.

At trial, Bonner testified that after his father died, he and his sister, Ethel Taylor, inherited the property, and she then conveyed her interest in the property to him in 2015.[4] Bonner had lived on the property for thirteen years. Bonner built a house on the property as well as a driveway and a well. He also added two septic systems.

---

[3] Later, Bonner filed an amended petition, stating that he had "deeded the property" to White "so long as [White] would pay the property taxes." (Emphasis omitted.) And Bonner would stay on the property until his death. However, taxes had become delinquent on the property because White had not "paid the taxes." Bonner requested that the transaction be rescinded because of a failure of consideration or breach of contract, or that the deed "should be reformed to a [d]eed with [l]ife estate to Bonner." Bonner also asserted that the deed should be rescinded because of a lack of mental capacity.

[4] A copy of a Warranty Deed, dated November 13, 2015, was admitted into evidence at trial. The deed stated: "That ETHEL TAYLOR, Individually and as a beneficiary of the Estate of Leon Bonner, . . . for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS and other good and valuable consideration paid to [Taylor] by [Bonner] . . . , has GRANTED, SOLD, AND CONVEYED, and by these presents does HEREBY GRANT, SELL, AND CONVEY unto . . . Bonner . . . all of her interest" in the property. Bonner testified that it was Taylor's signature on the Warranty Deed.

4

Bonner further testified that White was his nephew and Taylor's son. Bonner and White made an agreement that White would inherit the property after Bonner died and White would pay the property taxes. Bonner would continue living at the property until his death. Bonner testified that on October 14, 2022, he signed an Affidavit of Ownership, Notice of Homestead Rights, and Conditional Gift, a copy of which the trial court admitted into evidence. In that document, he swore that he gave the property to White, but he wanted to "retain a life estate and [he] wanted to keep it under [his] name and use it for the rest of [his] life." According to Bonner, that would allow the property to be exempt from taxes because he was a disabled veteran, it was his homestead, and he was over sixty-five years old. This was still Bonner's intention at the time of trial.

A copy of a Warranty Deed was admitted into evidence, and Bonner testified that his signature was on the deed. The Warranty Deed, dated September 17, 2020, stated: "For valuable consideration in the sum of $20.00, the receipt of which is hereby acknowledged, [Bonner] grant[s] and convey[s] and warrant[s] to [White] the following real property (the premises) located in Brazoria County/Parish, Texas." A legal description of the property was provided.

Bonner testified that he did not remember signing the September 17, 2020 Warranty Deed because of his "substance abuse addiction." According to Bonner, he was "totally impaired" and "under the influence of cocaine and whiskey." But

5

no one had ever forced Bonner to use narcotics. Bonner also stated that he had been "getting VA treatment" for "over [forty] years" and he had "been to three mental hospitals." Bonner had "been in drug rehab" and "in and out of prison for the last . . . [forty] years for drug related offenses and for mental offenses." Bonner was a veteran and had been diagnosed with post-traumatic stress disorder ("PTSD").

Bonner wanted the trial court to invalidate the Warranty Deed from September 17, 2020. According to Bonner, White did not pay Bonner $20 for the property as stated in the Warranty Deed.

Bonner also testified that he and White had both been sued for failure to pay taxes on the property, and White had never paid the property taxes.

White testified that he had an agreement with Bonner that Bonner could live on the property if he paid White "something every month for rent." White received $300 from Bonner one time and then "a partial payment," but White never made an agreement with Bonner that he could "just move in" to the property. Bonner lived on the property for about eleven and a half years.

White also testified that Bonner had forged Taylor's signature on the deed that conveyed her interest in the property to Bonner in 2015. According to White, Taylor would have had no reason to transfer her interest in the property to Bonner.

Related to the Warranty Deed, dated September 17, 2020, White stated that he had prepared the document, and he paid Bonner $20 for the property. White did

6

not give Bonner narcotics and alcohol on the day the Warranty Deed was signed, and Bonner was not intoxicated at the time he signed the deed. White did nothing illegal to obtain the property from Bonner. White understood that the September 17, 2020 Warranty Deed transferred Bonner's interest in the property to him. White sought to have the trial court conclude that the September 17, 2020 Warranty Deed was valid.

As to the suit for taxes related to the property, White stated that he had made arrangements to pay the taxes. According to White, he still owed $1,500 in taxes related to the property, but he had made several payments.

Elaine Bonner ("Elaine") testified that she was Bonner's sister and White's aunt. Elaine did not believe that it was Taylor's signature on the November 13, 2015 Warranty Deed that conveyed the Taylor's interest in the property to Bonner.

Following trial, but before the trial court signed its final judgment, Bonner filed a "Post Trial/Pre Ruling Motion to introduce newly discovered evidence provided to Plaintiff []but not available prior to or during trial," requesting that the trial court "hold the [September 17, 2020 Warranty] [D]eed [u]nenforceable as a matter of law and fact because it [was] a forged instrument." In his motion, Bonner asserted that after trial, his oldest brother told him that White's real name was "John Taylor." Because White did not use the name "John Taylor" to sign the September 17, 2020 Warranty Deed, Bonner asserted that the deed was forged and

unenforceable. Bonner attached to his motion, an affidavit signed by his brother, dated January 22, 2025, and a purported pamphlet from the funeral of Bennett Brook Taylor, Jr. who died on May 1, 1998. The pamphlet stated that Bennett Brook Taylor, Jr. was married to "Ethel Bonner" and had a son named "John."

Bonner also filed a "Post Trial/Pre Ruling []Motion to Set Aside And Cancel Defendant's Forged Deed," requesting that the trial court set aside and cancel the September 17, 2020 Warranty Deed because Bonner had learned that White's real name was "John Taylor," which was not the name White used when signing the Warranty Deed. According to Bonner, such evidence was "unknown to and not available to [him] before trial."[5] (Internal quotations omitted.)

On February 5, 2025, the trial court entered a final judgment on Bonner's "Motion to Vacate a Land Deed based on Petitioner's lack of a sound mind and lack of mental competence to make a land/contract deed with [White], due to Military – mental illness," ordering that the Warranty Deed dated September 17, 2020 was valid. In doing so, the trial court made the following findings of fact:

1. [Bonner] was of sound mind and mental competence to execute a valid land contract/deed to [White] on September 17th, 2020.

2. [Bonner] did not meet his burden of proof in proving that on September 17th, 2020, he lacked the requisite capacity and

---

[5]     Bonner filed an additional motion titled, "Good Cause Motion for Defendant to Produce His Birth Certificate," requesting that White be required to produce his birth certificate.

mental competence to enter into the land contract/deed with [White] due to military mental illness.

3.  [Bonner] did not produce any credible evidence to support the allegations within his initial pleading.

4.  . . . [T]he Special Warranty Deed executed by [Bonner] on September 17th, 2020, which deed[ed] his share of the property . . . to [White], was not the product of . . . Bonner's voluntary consumption of whiskey, cocaine, and other substances.

5.  [Bonner] had contractual capacity to execute the Special Warranty Deed on September 17th, 2020.

6.  . . . [T]he provisions within the Special Warranty Deed executed by [Bonner] on September 17th, 2020, [were] clear and unambiguous[.]

7.  . . . [T]he Special Warranty Deed executed by [Bonner] on September 17th, 2020, was in writing.

8.  [Bonner] signed the land deed/contract conveying the property . . . to . . . White.

9.  . . . [T]he warranty deed properly conveyed [Bonner's] interest in the property . . . to . . . White.

10. . . . [T]he Special Warranty Deed executed by [Bonner] on September 17th, 2020, to . . . White was acknowledged, sworn to with proper jurat in accordance with the law.

11. . . . [T]he Special Warranty Deed executed by [Bonner] on September 17th, 2020, described the property to be conveyed.

12. . . . [T]he Special Warranty Deed executed by [Bonner] on September 17th, 2020, was delivered by [Bonner] and accepted by [White].

9

## Evidentiary Hearing

In his first issue,[6] Bonner asserts that the trial court "erred in denying [him] an evidentiary hearing on newly discovered posttrial/prejudgment evidence that was not available to [him] prior to or during the trial, but was timely presented to the [trial] [c]ourt, 'prior to the [c]ourt's [j]udgment[,]' on January 23rd, and 24th, 2025 in three [m]otions demonstrating that . . . [White] forged [the] property [d]eed . . . by purporting in writing to be one Jaunathon White, while his real name is 'John Taylor[,]' which render[ed] the deed a forged document as well as null and void ab initio and therefore, incapable of being remedied by a correction deed."

A party may file a motion for new trial based on newly discovered evidence. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Generally, whether to hold an evidentiary hearing on a motion for new trial in a civil matter is within the trial court's discretion. *See Obernhoff v. Nelson*, 01-17-00816-CV, 2019 WL 4065017, at *31 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, no pet.) (mem. op.); *Hamilton v. Pechacek*, 319 S.W.3d 801, 807 (Tex. App.—Fort Worth 2010, no pet.); *see also Landis v. Landis*, 307 S.W.3d 393, 394 (Tex. App.—San Antonio 2009, no pet.) (hearing on motion for new trial generally not mandatory). A trial court is only required to conduct a hearing after it is requested by a party and the

---

[6]  As stated previously, because Bonner, in his briefing, has "[c]ombined" his "Error[s] No. 1 and No. 4," we consider his first and fourth alleged errors together as his "first issue."

10

motion for new trial presents a question of fact upon which evidence must be heard, such as when a motion for new trial is based on newly discovered evidence. *Hensley v. Salinas*, 583 S.W.2d 617, 618 (Tex. 1979); *Obernhoff*, 2019 WL 4065017, at \*31; *J.L.L. v. State*, No. 01-09-00808-CV, 2011 WL 1631915, at \*13 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, no pet.) (mem. op.) ("In a civil case, a trial court is obligated to conduct a hearing on a motion for new trial if (1) the motion properly requests a hearing, (2) the motion presents a question of fact upon which evidence must be heard, and (3) the motion alleges facts that if true would entitle the movant to a new trial." (internal quotations omitted)).

Here, Bonner did not request an evidentiary hearing in his "Post Trial/Pre Ruling Motion to introduce newly discovered evidence provided to Plaintiff []but not available prior to or during trial," in his "Post Trial/Pre Ruling []Motion to Set Aside And Cancel Defendant's Forged Deed," or in his "Good Cause Motion for Defendant to Produce His Birth Certificate." Thus, we cannot conclude that the trial court "erred in denying [him] an evidentiary hearing on newly discovered posttrial/prejudgment evidence." *See* Tex. R. App. P. 33.1(a); *In re J.A.L.*, 630 S.W.3d 249, 253 (Tex. App.—El Paso 2020, no pet.) (movant waived error where it did not seek a hearing on its motion); *see also R & G Transp., Inc. v. Fleetmatics*, No. 01-14-00891-CV, 2016 WL 268553, at \*2 (Tex. App.—Houston [1st Dist.] Jan.

11

21, 2016, no pet.) (mem. op.) (no abuse of discretion when movant failed to set new-trial motion for hearing).

Further, to the extent that Bonner asserts, as part of his first issue, that the trial court should have treated his "Good Cause Motion for Defendant to Produce His Birth Certificate" as motion for new trial and "acted on" it by ordering White to produce his birth certificate, we note that Bonner did not verify his motion.[7]  A motion for new trial based on newly discovered evidence must be verified.  *Powell v. Comm'n for Law. Discipline*, 710 S.W.3d 288, 334 (Tex. App.—Houston [1st Dist.] 2024, no pet.).  A trial court does not abuse its discretion in denying a motion for new trial based on newly discovered evidence when it is not verified.  *See id.*; *Yuen v. Fisher*, 227 S.W.3d 193, 205 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  Thus, we cannot conclude that the trial court should have "acted on" Bonner's motion.

We overrule Bonner's first issue.

## Bench Trial

In his third issue, Bonner argues that the trial court erred in entering final judgment against him because it should not have "reject[ed] [his] expert [p]sychiatric PTSD diagnosis evidence and instead[] accepted [White's] forged deed as evidence against [Bonner]."

---

[7]     None of Bonner's three motions filed following trial were verified.

In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility and weight to be given to their testimony, and it is tasked with resolving conflicts in the evidence and drawing reasonable inferences from basic facts to ultimate facts. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819–21 (Tex. 2005); *Morrell v. Morrell*, No. 09-20-00086-CV, 2022 WL 959943, at *12 (Tex. App.—Beaumont Mar. 31, 2022, pet. denied) (mem. op.). The trial court, as factfinder, may choose to believe one witness over another, and we cannot substitute our judgment for that of the factfinder's. *See Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018) (discussing in context of jury trial); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (same); *Morrell*, 2022 WL 959943, at *12. We leave it to the trial court to reconcile any conflicts in the evidence presented. *Grapevine Grp. Concrete Contractors, Inc. v. YC Partners, Ltd.*, No. 04-22-00756-CV, 2025 WL 3228904, at *3 (Tex. App.—San Antonio Nov. 19, 2025, no pet. h.) (mem. op.).

At trial, Bonner testified that he had been diagnosed with PTSD, and he had a long history of substance abuse. He also testified that he did not remember signing the September 17, 2020 Warranty Deed because of his "substance abuse addiction."

Bonner's complaint on appeal is essentially that the trial court should have believed his testimony and not any conflicting evidence. However, as the factfinder, the trial court was the sole judge of Bonner's credibility and was entitled to accept

13

or reject any or all of Bonner's testimony. Thus, we cannot conclude that the trial court erred in rejecting all or part of Bonner's testimony. *See Huskins v. Garcia*, No. 02-21-00328-CV, 2022 WL 3905083, at *4 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.) (mem. op.) ("[T]his is a credibility issue, and that determination belongs exclusively to the trial court as factfinder, not to this [appellate] court."); *see also Ramirez v. Ramirez*, No. 03-18-00200-CV, 2019 WL 1561812, at *8 (Tex. App.—Austin Apr. 11, 2019, no pet.) (mem. op.) (noting trial court could have found witness's testimony "not . . . credible," especially in light of parties' written agreement).

We overrule Bonner's third issue.

## Inadequate Briefing

In his second issue, Bonner asserts that "[i]n light of the fact that [he] [was] a 73 year old 100% Service connected/disabled Vietnam Army Veteran, diagnosed and treated for over 50 years by VA Expert Psychiatrist for incurable Post Traumatic Stress Disorde[r] (PTSD) for well over 50 years, . . . the [trial] [c]ourt . . . erred by finding that [he] was competent to enter into the property deed with [White]."

Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations."

14

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.).

Related to his second issue, Bonner, in his briefing, does not provide this Court with appropriate argument, analysis, discussion, or citation to proper legal authority. *See* TEX. R. APP. P. 38.1(i); *Richardson v. Marsack*, No. 05-18-00087-CV, 2018 WL 4474762, at *1 (Tex. App.—Dallas Sept. 19, 2018, no pet.) (mem. op.) ("Our appellate rules have specific requirements for briefing," including requiring "appellants to state concisely their complaints, to provide succinct, clear, and accurate arguments for why their complaints have merit in law and fact, to cite legal authority that is applicable to their complaints, and to cite appropriate references in the record."); *Huey*, 200 S.W.3d at 854 ("We have no duty to brief appellant's issue for [him]. Failure to cite to applicable authority or provide substantive analysis waives an issue on appeal."); *see also Hopes-Fontenot v. Farmers New World Life Ins. Co.*, No. 01-12-00286-CV, 2013 WL 4399218, at *1

15

(Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) (mem. op.) (pro se litigant must properly present his case on appeal; we "may not make allowances or apply different standards for litigants appearing without . . . counsel").

Accordingly, we hold that Bonner has waived his second issue due to inadequate briefing.

## Conclusion

We affirm the judgment of the trial court.

Kristin Guiney
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.